**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF ILLINOIS**

| | |
|---|---|
| **DWAYNE COOK, # M-42466,** | ) |
| | ) |
| **Plaintiff,** | ) |
| | ) |
| vs. | )   Case No. 15-cv-083-NJR |
| | ) |
| **DEE DEE BROOKHART,** | ) |
| **and SANDRA FUNK,** | ) |
| | ) |
| **Defendants.** | ) |

## MEMORANDUM AND ORDER

**ROSENSTENGEL, District Judge:**

Plaintiff, who is currently incarcerated at Robinson Correctional Center ("Robinson"), has brought this *pro se* civil rights action pursuant to 42 U.S.C. § 1983. He also raises a claim under the Americans with Disabilities Act ("ADA"), 42 U.S.C. §12101, *et seq*. Plaintiff is serving a short-term sentence for several driving-related convictions. He is confined to a wheelchair. The basis for his complaint is that his scheduled transfer to another prison was canceled because the new facility was allegedly not ADA-accessible.

According to the complaint, when Plaintiff's criminal sentences were imposed, the trial judge ordered that he was to receive addiction services while incarcerated (Doc. 1, pp. 5, 8-9). Apparently, the program Plaintiff desires is not available at Robinson. Plaintiff applied to transfer to Sheridan Correctional Center ("Sheridan") in order to participate in the drug treatment program offered there. His application was approved after he was interviewed at Robinson. The prison official who conducted this in-person interview was from either Sheridan or the TASC (treatment) program (Doc. 1, p. 7). In October 2014, however, when the time came for Plaintiff

to board the transfer bus, Plaintiff was informed that his transfer was cancelled because he is handicapped.

By letter dated December 4, 2014, Defendant Brookhart (Assistant Warden of Programs at Robinson) notified Plaintiff that his transfer to Sheridan was denied on October 10, 2014, by the Transfer Coordinator's Office (headed by Defendant Funk) because "Sheridan is not ADA accessible" (Doc. 1, p. 11). Plaintiff disputes the accessibility issue, however, because at his transfer interview, he was told that Sheridan *was* ADA accessible and housed several handicapped inmates. Defendant Brookhart was present during that interview (Doc. 1, p. 5). Plaintiff's father later confirmed the accessibility of Sheridan via a telephone call to that facility.

Plaintiff also applied to transfer to Jacksonville Correctional Center ("Jacksonville") in order to participate in their drug treatment program. On November 5, 2014, that transfer was also denied by the Transfer Coordinator's Office (Doc. 1, p. 10). The stated reason, again, was that Jacksonville is not ADA accessible. Plaintiff filed grievances over both the transfer denials (Doc. 1, pp. 12-15).

The complaint does not include a prayer for relief. Due to the nature of Plaintiff's allegations and the specific relief requested in his attached grievances, however, the Court will construe his complaint as seeking injunctive relief in the form of a transfer to a facility where Plaintiff may obtain access to the addiction services ordered by his sentencing court.

**Merits Review Pursuant to 28 U.S.C. § 1915A**

Under § 1915A, the Court is required to conduct a prompt threshold review of the complaint and to dismiss any claims that are frivolous, malicious, fail to state a claim on which relief may be granted, or seek monetary relief from an immune defendant.

Based on the allegations of the complaint, the Court finds it convenient to divide the *pro se* action into the following counts. The parties and the Court will use these designations in all future pleadings and orders, unless otherwise directed by a judicial officer of this Court. The designation of these counts does not constitute an opinion as to their merit.

> **Count 1:** Constitutional claims for the denial/cancellation of Plaintiff's transfer requests and for the denial of access to addiction treatment;
>
> **Count 2:** Claims under the Americans with Disabilities Act ("ADA") and/or the Rehabilitation Act ("RA") for the denial/cancellation of Plaintiff's transfer requests and for excluding him from addiction treatment, based on his disability.

As shall be discussed below, the events outlined in the complaint do not amount to a violation of Plaintiff's constitutional rights. **Count 1** shall therefore be dismissed for failure to state a claim upon which relief may be granted. However, Plaintiff's statutory claims under **Count 2** survive review under § 1915A and shall receive further consideration.

**Dismissal of Count 1 – Constitutional Claims**

Plaintiff asserts, without elaboration, that Defendants' actions violated his constitutional rights. However, no constitutional concerns are implicated.

Prison inmates do not have any constitutional right to participate in rehabilitative programs that may be offered by the Department of Corrections. It is well settled that there is no property or liberty interest in attending educational, vocational, or rehabilitative courses while in prison, and institutions are not constitutionally required to provide these programs to inmates. *Zimmerman v. Tribble*, 226 F.3d 568, 571 (7th Cir. 2000) (prisoner had no 14th Amendment due process claim for being transferred to a prison where he could no longer enroll in programs that might earn him earlier release); *see also Higgason v. Farley*, 83 F.3d 807, 809 (7th Cir. 1996);

*Garza v. Miller*, 688 F.2d 480, 486 (7th Cir. 1982), *cert. denied* 459 U.S. 1150 (1983). Under this authority, Plaintiff cannot maintain a constitutional claim for the denial of access to the addiction treatment programs offered at Sheridan, Jacksonville, or any other institution.

Likewise, prisoners do not have a constitutional right to be placed in the prison of their choice. "[P]risoners possess neither liberty nor property in their classifications and prison assignments. States may move their charges to any prison in the system." *DeTomaso v. McGinnis*, 970 F.2d 211, 212 (7th Cir. 1992) (citing *Montanye v. Haymes*, 427 U.S. 236 (1976)). *See also Meachum v. Fano*, 427 U.S. 215, 224 (1976) (the Constitution does not guarantee placement in a particular prison). Thus, no constitutional claim arises from the denial or cancellation of Plaintiff's requests for transfers away from Robinson.

Plaintiff suggests that the refusal to transfer him amounted to "discrimination." This shall be discussed further in relation to Plaintiff's statutory claims in Count 2. However, the complaint does not support a constitutional claim for discrimination against Plaintiff in violation of his right to equal protection as a disabled person.

A "prison administrative decision may give rise to an equal protection claim only if the plaintiff can establish that 'state officials had purposefully and intentionally discriminated against him.'" *Meriwether v. Faulkner*, 821 F.2d 408, 415 n.7 (7th Cir.), *cert. denied*, 484 U.S. 935 (1987) (citing *Shango v. Jurich*, 681 F.2d 1091, 1104 (7th Cir. 1982)). In other words, to state a claim for unconstitutional discrimination, the complaint must suggest that a prison official "singled out a particular group for disparate treatment and selected his course of action at least in part for the purpose of causing its adverse effects on the identifiable group." *Nabozny v. Podlesny*, 92 F.3d 446, 453-54 (7th Cir. 1996) (quoting *Shango v. Jurich*, 681 F.2d 1091, 1104

(7th Cir. 1982)). "[I]solated events that adversely affect individuals are not presumed to be a violation of the equal protection clause." *Shango*, 681 F.2d at 1104 (quoting *Gamza v. Aguirre*, 619 F.2d 449, 453 (5th Cir. 1980)).

Nothing in the complaint indicates that Plaintiff's transfer request was denied or rescinded as a result of intentional discrimination against him based on his status as a person with a disability. If, as Plaintiff was told, Sheridan is in fact an accessible facility and houses some wheelchair-bound inmates, then there has not been a practice of excluding disabled people as a group from that facility and its programs. The denial of Plaintiff's transfer certainly had an adverse effect on him, in his judgment. But the facts he relates do not suggest that Defendants have singled out disabled inmates for discriminatory treatment by excluding them from the prison system's addiction treatment programs. Plaintiff thus fails to state a constitutional claim for discrimination based on his disability.

Finally, the complaint does not state an Eighth Amendment claim for the denial of access to an addiction treatment program. Under some circumstances, the denial of medical treatment may violate an inmate's constitutional rights. "A prisoner's claim for deliberate indifference must establish (1) an objectively serious medical condition; and (2) an official's deliberate indifference to that condition. Deliberate indifference is proven by demonstrating that a prison official knows of a substantial risk of harm to an inmate and either acts or fails to act in disregard of that risk. Delaying treatment may constitute deliberate indifference if such delay exacerbated the injury or unnecessarily prolonged an inmate's pain." *Gomez v. Randle*, 680 F.3d 859, 865 (7th Cir. 2012) (internal citations and quotations omitted). "A 'serious' medical need is one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a

lay person would easily recognize the necessity for a doctor's attention." *Gutierrez v. Peters*, 111 F.3d 1364, 1371 (7th Cir. 1997).

Plaintiff's self-professed need and desire to participate in a rehabilitative program to treat his addiction is admirable and should be accommodated if at all possible. The complaint does not demonstrate, however, that his addiction rises to the level of an "objectively serious medical condition" that requires prompt medical attention. No doctor has prescribed a course of treatment for him that prison officials have failed to follow. Even though Plaintiff's trial judge included the provision of addiction services in his sentencing order, this is not the same as a medical opinion or diagnosis that might trigger Eighth Amendment scrutiny.

For these reasons, Plaintiff's constitutional claims in **Count 1** shall be dismissed without prejudice.

**Count 2 – ADA and RA Claims**

Although Plaintiff does not have a constitutional claim, he may proceed at this time with statutory claims for discrimination under both the ADA and the RA. Claims of discrimination on account of a disability, especially those from *pro se* prisoner litigants, must be analyzed in light of both the ADA and the Rehabilitation Act, 29 U.S.C. § 794, whether or not the plaintiff has asserted a claim under the latter statute. *Norfleet v. Walker*, 684 F.3d 688, 690 (7th Cir. 2012).

"In order to make out a prima facie case of discrimination under both the ADA and the Rehabilitation Act, a plaintiff must show: (1) that he suffers from a disability as defined in the statutes, (2) that he is qualified to participate in the program in question, and (3) that he was either excluded from participating in or denied the benefit of that program based on his disability." *Novak v. Bd. of Trustees of S. Ill. Univ.*, No. 14-2663, 2015 WL 525826, at *5 (7th

Cir. Feb. 10, 2015) (citing *Jackson v. City of Chicago*, 414 F.3d 806, 810 (7th Cir. 2005)). The complaint herein states each of these factors. In addition to these three elements common to both statutes, a plaintiff under the RA must show that the program or institution received federal financial assistance. 29 U.S.C. § 794(a). This element is also satisfied here, because all state prisons receive federal funds. *Jaros v. Illinois Dept. of Corr.*, 684 F.3d 667, 671 (7th Cir. 2012).

The ADA applies to prisons. *Penn. Dep't of Corr. v. Yeskey*, 524 U.S. 206, 210 (1998). An inmate may sue state officials in their official capacity for prospective injunctive relief under Title II of the ADA. *Brueggeman ex rel. Brueggeman v. Blagojevich*, 324 F.3d 906, 912 (7th Cir. 2003). Injunctive relief is also available under the RA. *Jaros*, 684 F.3d at 671. Because the focus of Plaintiff's action is his desire for a transfer to an ADA-accessible prison where he will have access to an addiction treatment program, he may proceed at this juncture under both the ADA and the RA.

Notably, claims under Title II of the ADA must be brought against a governmental (i.e., public) entity. 42 U.S.C. § 12132. The same is true for RA claims. "[E]mployees of the Department of Corrections are not amenable to suit under the Rehabilitation Act or the ADA." *Jaros*, 684 F.3d at 670 (citing 29 U.S.C. § 794(b); 42 U.S.C. § 12131). Therefore, Defendants Brookhart and Funk shall be dismissed from this action. **Count 2** for injunctive relief under the ADA and RA shall proceed against the Illinois Department of Corrections ("IDOC"), and the Clerk shall be directed to add this entity as a party Defendant.

**Pending Motions**

Plaintiff's motion for recruitment of counsel (Doc. 3) shall be referred to United States Magistrate Judge Wilkerson for further consideration.

The motion for service of process at government expense (Doc. 4) shall be **GRANTED in part AND DENIED in part.**  Service shall be ordered below on the Illinois Department of Corrections.  No service shall be made on the dismissed Defendants.

**<u>Disposition</u>**

The Clerk is **DIRECTED** to add the **ILLINOIS DEPARTMENT of CORRECTIONS** as a party Defendant in this action.

**COUNT 1** is **DISMISSED** without prejudice for failure to state a claim upon which relief may be granted.  Defendants **BROOKHART** and **FUNK** are **DISMISSED** from this action without prejudice.  Going forward, this action shall be captioned as: **DWAYNE COOK, Plaintiff, vs. The ILLINOIS DEPARTMENT OF CORRECTIONS, Defendant.**

The Clerk of Court shall prepare for Defendant **ILLINOIS DEPARTMENT OF CORRECTIONS** (1) Form 5 (Notice of a Lawsuit and Request to Waive Service of a Summons), and (2) Form 6 (Waiver of Service of Summons).  The Clerk is **DIRECTED** to mail these forms, a copy of the complaint, and this Memorandum and Order to the Director of IDOC, S.A. Godinez, 1301 Concordia Court, P.O. Box. 19277, Springfield, IL 62794.  If the Defendant fails to sign and return the Waiver of Service of Summons (Form 6) to the Clerk within 30 days from the date the forms were sent, the Clerk shall take appropriate steps to effect formal service on the Defendant, and the Court will require the Defendant to pay the full costs of formal service, to the extent authorized by the Federal Rules of Civil Procedure.

The plaintiff is **ORDERED** to serve upon the Defendant (or upon defense counsel once an appearance is entered), a copy of every pleading or other document submitted for consideration by the Court.  Plaintiff shall include with the original paper to be filed a certificate

stating the date on which a true and correct copy of the document was served on the Defendant or counsel. If the Plaintiff is incarcerated in a correctional facility that participates in the Electronic Filing Program, service may be made in accordance with General Order 2014-1 describing service under that program. Any paper received by a district judge or magistrate judge that has not been filed with the Clerk or that fails to include a certificate of service will be disregarded by the Court.

The Defendant is **ORDERED** to timely file an appropriate responsive pleading to the complaint and shall not waive filing a reply pursuant to 42 U.S.C. § 1997e(g).

Pursuant to Local Rule 72.1(a)(2), this action is **REFERRED** to United States Magistrate Judge **Donald G. Wilkerson** for further pre-trial proceedings, which shall include a determination on the pending motion for recruitment of counsel (Doc. 3). Further, this entire matter shall be **REFERRED** to United States Magistrate Judge Wilkerson for disposition, pursuant to Local Rule 72.2(b)(2) and 28 U.S.C. § 636(c), *if all parties consent to such a referral.*

If judgment is rendered against Plaintiff, and the judgment includes the payment of costs under § 1915, Plaintiff will be required to pay the full amount of the costs, notwithstanding that his application to proceed *in forma pauperis* has been granted. *See* 28 U.S.C. § 1915(f)(2)(A).

Plaintiff is **ADVISED** that at the time application was made under 28 U.S.C. § 1915 for leave to commence this civil action without being required to prepay fees and costs or give security for the same, the applicant and his or her attorney were deemed to have entered into a stipulation that the recovery, if any, secured in the action shall be paid to the Clerk of the Court, who shall pay therefrom all unpaid costs taxed against plaintiff and remit the balance to Plaintiff.

Local Rule 3.1(c)(1).

Finally, Plaintiff is **ADVISED** that he is under a continuing obligation to keep the Clerk of Court and each opposing party informed of any change in his address; the Court will not independently investigate his whereabouts. This shall be done in writing and not later than **7 days** after a transfer or other change in address occurs. Failure to comply with this order will cause a delay in the transmission of court documents and may result in dismissal of this action for want of prosecution. *See* FED. R. CIV. P. 41(b).

**IT IS SO ORDERED.**

**DATED: February 18, 2015**

_____
**NANCY J. ROSENSTENGEL**
**United States District Judge**