IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| DWAYNE COOK, | ) |
| Plaintiff, | ) |
| vs. | ) Case No. 3:15-cv-83-NJR-DGW |
| ILLINOIS DEPARTMENT OF CORRECTIONS and JOHN DOE, | ) |
| Defendants. | ) |

# MEMORANDUM AND ORDER

**ROSENSTENGEL, District Judge:**

Plaintiff Dwayne Cook filed an amended complaint in this action on July 12, 2016, alleging claims under the Americans with Disabilities Act (ADA), the Rehabilitation Act, and the Eighth Amendment (Doc. 49). Defendant Illinois Department of Corrections (IDOC) has filed a Motion for Summary Judgment arguing that Cook cannot provide evidence to support any of his claims (Doc. 68). For the reasons set forth below, the Motion for Summary Judgment is denied.

### BACKGROUND

Plaintiff Dwayne Cook was previously incarcerated in the IDOC as a result of several driving-related convictions (Doc. 7, p. 1). When his criminal sentences were imposed, the trial judge included an order that Cook was to receive addiction services while incarcerated (Doc. 1, pp. 5, 8-9). It is undisputed that, prior to filing this action, Cook was twice approved for transfer to facilities that provided addiction treatment programs, but both times his transfer was cancelled because the facilities were not ADA

compliant (Doc. 68-1, p. 12; Doc. 68-3, p. 2). Cook is confined to a wheelchair, which he uses for all of his mobility (Doc. 49, p. 2).

Only two IDOC facilities contain ADA accessible drug treatment programs (Doc. 68-6, p. 2). During the time Cook was incarcerated, the IDOC had four to five wheelchair-accessible cells in the treatment program at Taylorville Correctional Center, and one wheelchair-accessible cell in the treatment program at Big Muddy Correctional Center. (Doc. 68-6, pp. 2-3). A few weeks after filing this lawsuit, Cook again was approved and eventually transferred to Big Muddy (Doc. 68-1, p. 30).

It is undisputed that Cook received no substance abuse treatment either before his transfer to Big Muddy (Doc. 68-1, p. 30) or for a year after his transfer (*see* Doc. 67-1, p. 20). It is also undisputed that, contrary to IDOC policy, Cook had less than six months remaining on his sentence when he was finally placed in the substance abuse program at Big Muddy (Doc. 68-1, p. 18). While IDOC records indicate he completed a nine-month substance abuse program, Cook's counselor admitted in her deposition that Cook only received about four months of treatment (Doc. 67-1, p. 25). Further, the counselor admitted that had Cook not been released from custody, she would have recommended he remain in the substance abuse program (*Id.*).

## LEGAL STANDARD

Summary judgment is proper only where the moving party can demonstrate no genuine issue of material fact exists and the movant is entitled to judgment as a matter of law. FED. R. CIV. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Ruffin-Thompkins v. Experian Information Solutions, Inc.*, 422 F.3d 603, 607 (7th Cir. 2005). All facts and

reasonable inferences must be construed in favor of the non-moving party. *Blow v. Bijora, Inc.*, 855 F.3d 793, 797 (7th Cir. 2017) (*citing Calumet River Fleeting, Inc. v. Int'l Union of Operating Eng'rs, Local 150, AFL-CIO*, 824 F.3d 645, 647-48 (7th Cir. 2016)).

After a properly supported motion for summary judgment is made, the adverse party "must set forth specific facts showing that there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986) (quoting FED. R. CIV. P. 56(e)(2)). A fact is material if it is outcome determinative under applicable law. *Anderson*, 477 U.S. at 248; *Ballance v. City of Springfield, Ill. Police Dep't*, 424 F.3d 614, 616 (7th Cir. 2005). A genuine issue of material fact exists if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248. "A mere scintilla of evidence in support of the non-movant's petition is insufficient; a party will be successful in opposing summary judgment only when it presents definite, competent evidence to rebut the motion." *Albiero v. City of Kankakee*, 246 F.3d 927, 931–32 (7th Cir. 2001) (*rev'd on other grounds*).

The Seventh Circuit has stated that summary judgment is "the put up or shut up moment in a lawsuit, when a party must show what evidence it has that would convince a trier of fact to accept its version of the events." *Steen v. Myers*, 486 F.3d 1017, 1022 (7th Cir. 2007) (quoting *Hammel v. Eau Galle Cheese Factory*, 407 F.3d 852, 859 (7th Cir. 2005) (other citations omitted)). The judge's role at summary judgment, however, is not to weigh the evidence or assess the facts, but to determine whether there is a genuine issue for trial. *Id.* at 259. Credibility determinations, weighing of evidence, and drawing of reasonable inferences from the facts are left to the jury. *Anderson*, 477 U.S. at 250.

DISCUSSION

A. ADA Claim

A plaintiff will make out a *prima facie* case of discrimination under both the ADA and the Rehabilitation Act[1] by showing he: (1) suffers from a disability as defined in the statutes, (2) is qualified to participate in the program in question, and (3) was either excluded from participating in or denied the benefit of that program based on a disability. *Novak v. Bd. of Trustees of S. Ill. Univ.*, 77 F.3d 966, 974 (7th Cir. 2015) (citing *Jackson v. City of Chicago*, 414 F.3d 806, 810 (7th Cir. 2005)).

Here, it is undisputed that Cook is disabled—both as a person who uses a wheelchair for mobility and as an alcoholic (Doc. 67, p. 4). Thus, the first element of the *prima facie* case is met. While the IDOC makes much out of the fact that correctional facilities are not constitutionally required to provide drug treatment programs (Doc. 67, pp. 4-5), it admits that inmates cannot be subject to discrimination for those programs it chooses to provide (Doc. 67, p. 6). Further, the IDOC repeatedly approved and ultimately placed Cook in a treatment program (Doc. 67, p. 5). Thus, the Court finds that Cook was qualified to participate in the addiction treatment programs it provides. The only element at issue, then, is whether Cook was excluded from participating in or denied the benefit of an addiction treatment program because of his disability.

Title II of the ADA states that "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of

---

[1] ADA and Rehabilitation Act claims can be analyzed together because the elements of both claims are the same, except that the Rehabilitation Act has an additional element of requiring receipt of federal funds. 29 U.S.C. § 794(a); *Jaros v. Ill. Dep't of Corr.*, 684 F.3d 667, 671-72 (7th Cir. 2012). Illinois accepts federal funds to help run its prisons, so that additional element is met here. *See id.*

the services, programs or activities of a public entity, or be subjected to discrimination by any such entity." 42 U.S.C. § 12132. Failure to make reasonable accommodations to ensure participation in the public entity's programs or services by a person with a disability qualifies as "discrimination." 42 U.S.C. § 12112(b)(5)(A); *Wisc. Cmty. Servs., Inc. v. City of Milwaukee*, 465 F.3d 737, 753 (7th Cir. 2006).

The IDOC alleges it provided reasonable accommodations because Cook was ultimately able to participate in and graduate from a substance abuse program at Big Muddy (Doc. 67, p. 7). In *Jaros v. IDOC*, however, the Seventh Circuit found the inability of the disabled inmate to access prison services *on the same basis* as non-disabled inmates meant the prison had failed to provide a reasonable accommodation. *Jaros v. IDOC*, 684 F.3d 667, 672 (7th Cir. 2012).

Here, material issues of fact exist upon which a jury could find the accommodation provided by the IDOC was not reasonable. The IDOC admits Cook was not allowed to participate in drug treatment programs in at least two facilities because of his disability (Doc. 67, p. 5). When he was finally transferred, Cook was sent to Big Muddy—a facility that had only one wheelchair-accessible cell in the treatment program wing (Doc. 67, p. 7; Doc. 68-6, pp. 2-3). As a result, treatment was not available to Cook until four months before he was paroled (Doc. 49, p. 3; Doc. 67-1, p. 3). This appears contrary to the IDOC's policy requiring an inmate entering the program to have six to ten months left on his sentence (Doc. 68-1, p. 18), presumably because that time is ideal for completion of the program. Indeed, the manager of the drug treatment program

testified that Cook's prognosis at graduation was "guarded" and that "he did have some more things that he needed to work on." (Doc. 67-1, p. 26).

Because the IDOC admits Cook only received four months of actual treatment, and would have remained in the program for longer had he not been released on parole, a jury could reasonably find the program provided to Cook was substantially shorter and less comprehensive when compared to non-disabled inmates who are offered the program. Thus, material issue of fact exists as to whether Cook was excluded from participating in or denied the benefit of the drug treatment program based on a disability, making summary judgment is improper.

**B.        Availability of Damages**

The IDOC next argues it is entitled to summary judgment on Cook's ADA claim because Cook cannot show the IDOC's actions were intentional.[2] The Seventh Circuit has not addressed whether intentional discrimination is required for an award of compensatory damages in ADA cases. *Phipps v. Sheriff of Cook Cnty.*, 681 F.Supp.2d 899, 918 (N.D. Ill. Feb. 19, 2010). The Court notes, however, that several other circuits require intentional discrimination. *Nieves–Marquez v. Puerto Rico,* 353 F.3d 108, 126 (1st Cir. 2003); *Delano–Pyle v. Victoria County, Tex.*, 302 F.3d 567, 574 (5th Cir. 2002); *Ferguson v. City of Phoenix*, 157 F.3d 668, 674 (9th Cir. 1998); *Powers v. MJB Acquisition Corp.*, 184 F.3d 1147, 1152–53 (10th Cir. 1999); *Wood v. President and Trustees of Spring Hill Coll. in City of Mobile,* 978 F.2d 1214, 1219–20 (11th Cir. 1992). These same courts generally apply a

---

[2] While Cook's original complaint sought only injunctive relief, his Amended Complaint requested compensatory damages (Doc. 49, p. 8).

"deliberate indifference" standard to determine whether the alleged discrimination was intentional. *Id.* Deliberate indifference can be inferred where there is a strong likelihood that pursuit of a policy will result in the violation of a federally protected right. *Phipps,* 681 F.Supp.2d at 918.

Assuming for the sake of argument that intentional discrimination is required and that deliberate indifference is the appropriate standard, the Court finds there is evidence in the record upon which a jury could conclude the IDOC's actions were deliberately indifferent. Here, Cook made multiple requests to be transferred to facilities that would provide him with drug treatment (Doc. 67, p. 5). He was first approved for those programs, but later rejected because the facilities could not accommodate his disability (Doc. 68-1, p. 12; Doc. 68-3, p. 2). Thus, it is clear that by July 2014 at the latest, the IDOC was aware it needed to provide drug treatment to Cook in an ADA-compliant facility. Nevertheless, it failed to provide drug treatment until almost two years later, and not until Cook had only four months left on his sentence. A jury could find the failure to make any accommodations for Cook to receive treatment, even after two years' worth of requests from Cook, evidence that IDOC was aware of and disregarded a strong likelihood that Cook's rights under the ADA would be violated.

Further, although Taylorville[3] had four to five wheelchair accessible cells in its drug treatment wing, IDOC transferred Cook to Big Muddy, which only had one

---

[3] There is evidence in the record to suggest that Cook was not sent to Taylorville, a facility that could have provided Cook with access to a full-length treatment program, because he was falsely identified as being involved in a gang (Doc. 68, p. 8). It is unclear, however, at what point he was found not to have gang affiliations and whether it was sufficiently early to allow for a transfer to Taylorville. At the very least, such an ambiguity creates a material issue of fact for the jury.

wheelchair-accessible cell (Doc. 68-6, pp. 2-3). That cell was not available for almost a year after the transfer (Doc. 67-1, p. 20). A jury could find the decision to transfer Cook to Big Muddy rather than Taylorville, where he had a significantly higher likelihood of getting into one of the wheelchair-accessible cells sooner, was evidence of deliberate indifference.

Because there is evidence from which a jury could find the IDOC was aware of a strong likelihood that its actions would result in a violation of Cook's federally protected rights, summary judgment is inappropriate.

**C.    Physical Injury**

Under the Prison Litigation Reform Act (PLRA) § 1997(e), a prisoner cannot bring a claim for mental injuries unless he has also suffered a physical injury. 42 U.S.C. § 1997e(e) (2001). The IDOC argues it is entitled to summary judgment on all claims because Cook cannot provide "verifiable medical evidence showing he suffered any physical injury as a result of Defendant's alleged discrimination." (Doc. 67, p. 12).

Neither the PLRA nor the Seventh Circuit defines the term "physical injury." *Rahim v. Sheahan,* 2010 WL 1263493, at *9 (N.D. Ill. Oct. 18, 2001). In applying the PLRA, district courts in the Seventh Circuit have determined that something more than a *de minimus* physical injury is necessary, but significant physical injury is not required. *Rahim*, 2010 WL 1263493, at *9; *Arnold v. Williams*, 2010 WL 2697156, at *2 (C.D. Ill. July 7, 2010) (citing *Siglar v. Hightower*, 112 F.3d 191, 193 (5th Cir. 1997)); *Lynch v. Flowers Foods Specialty Grp.*, 2011 WL 3876951, at *5 (E.D. Wis. Aug. 31, 2011) (citing *Hudson v. McMillian*, 503 U.S. 1, 6-8, (1992)). Furthermore, § 1997e(e) does not foreclose an action

for nominal or punitive damages involving no physical injury. *Calhoun v. DeTella*, 319 F.3d 936, 938 (7th Cir. 2003) (citing *Zehner v. Trigg,* 133 F.3d 459, 462–63 (7th Cir. 1997)). Thus, IDOC's claim that it is entitled to summary judgment because there is no verifiable medical evidence appears unsupported by current case law.

The Court notes, however, that the evidence of physical injury here is less than extensive. Cook alleges he was "sick" as a result of not being transferred to drug treatment (Doc. 68, p. 11; Doc. 67-1, p. 6), felt pain, and suffered from nightmares (Doc. 67-1, p. 10). Whether such evidence ultimately results in an award of compensatory damages will likely depend on the credibility of Cook's testimony, which must be determined by a jury. *Anderson,* 477 U.S. at 250. Further, the Court is cognizant of the fact that the burden for summary judgment rests with the IDOC and all inferences of fact must be construed in favor of Cook. *Blow,* 855 F.3d at 797. As a result, the Court cannot say the IDOC is entitled to judgment as a matter of law. Further, even if Cook is not successful in obtaining compensatory damages, he may be entitled to nominal damages, which necessarily forecloses summary judgment.

## Conclusion

For the reasons set forth above, the Motion for Summary Judgment (Doc. 68) filed by Defendant Illinois Department of Corrections is **DENIED.**

**IT IS SO ORDERED.**

**DATED: January 4, 2018**

*[signature]*

_____
**NANCY J. ROSENSTENGEL
United States District Judge**